## In re MICROWAVE PRODUCTS OF AMERICA, INC., Debtor.

### Bankruptcy No. 88–27990–D (sbb).

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Jan. 12, 1989.

---

See also, Bkrtcy., 94 B.R. 971.

John W. Marshall, Memphis, Tenn., for Microwave Products of America, Inc., debtor.

Allen C. Jones, Memphis, Tenn., for plaintiffs.

Julie Chinn, Memphis, Tenn., Asst. U.S. trustee.

Michael P. Coury, Memphis, Tenn., for Unsecured Creditors Committee.

## MEMORANDUM OPINION AND ORDER ON MOTION BY COPYFAX, INC. FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ADEQUATE PROTECTION

BERNICE BOUIE DONALD,
Bankruptcy Judge.

This core proceeding was before the Court on December 5, 1988, as a hearing on the motion by Copyfax, Inc. (Copyfax) for relief from the automatic stay or for adequate protection.[1]

Debtor, Microwave Products of America, Inc. (Microwave Products) filed a voluntary petition under Chapter 11 of the United States Code on October 28, 1988. Debtor has undertaken to act as debtor-in-possession in its efforts to reorganize.

### Factual Summary

Copyfax is a business involving the sale and rental of copy machines including Facsimile machines. Debtor sent Copyfax a purchase order for a Murata F 30 fax machine and a Murata F 20 fax machine. The total purchase price was two thousand, nine hundred, ninety-two dollars and ninety-six cents ($2,992.96). The terms of the sale were that cash payment was due upon receipt of the invoices. The fax machines were shipped to the debtor by Copyfax on September 27th and 28th. Printed on each invoice was the phrase "Title to equipment does not pass to customer until Copyfax receives payment in full." The debtor has not tendered payment to Copyfax for the delivery of the fax machines. Copyfax avers that its representative contacted debtor by phone on October 20, 1988, requesting payment for the fax machines.

The issue before the Court is whether Copyfax has a right to reclaim the fax machines pursuant to 11 U.S.C. § 546(c) when demand for reclamation occurred more than ten days after delivery of the goods to the debtor?

### Discussion

Under Chapter 11 of the Bankruptcy Code, a business may file a petition for protection from its creditors and to allow it to reorganize and continue operations. Once the petition is filed, the automatic stay provision becomes effective.[2] The automatic stay prohibits the debtor's creditors from taking actions against the debtor to collect the debt or regain property subject to the debt.

---

**1.** 28 U.S.C. § 157(b)(2)(G).

**2.** 11 U.S.C. § 362.

However, the Code provides an avenue for creditors who, subsequent to the petition filing, seek to reclaim property delivered to an insolvent debtor prior to the filing of the bankruptcy petition. Reclamation of property is covered by 11 U.S.C. § 546(c)(1) & (2)(A) & (B) which state:

§ 546. Limitations on avoiding powers.

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but-

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods by the debtor; and

(2) the Court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the Court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

However, section 546(c) does not protect the right of reclamation against the trustee's avoiding powers unless the requisites of the section are met. Section 546(c) preserves statutory rights of sellers of goods only if the seller demands in writing reclamation of goods before ten days after receipt by the debtor. Also the debtor must have then been insolvent.[3]

In Tennessee, § 2–702 of the Uniform Commercial Code was adopted and codified as T.C.A. § 47–2–702(2) which states in pertinent part:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten (10) days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three (3) months before delivery the ten (10) day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

Both the Bankruptcy Code, pursuant to section 546, and State statutory law § 47–2–702(2) require that the seller make demand to the debtor for the return of the goods within ten days.[4]

The purpose of section 546 is "[to] recognize, in part, the validity of section 2–702 of the Uniform Commercial Code...." HR Rep No. 95–595, 95th cong, 1st Sess 371–72 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6327, 6328. Furthermore, both cash and credit sales are controlled by section 546.[5] Section 2–702 must be read in pari materia with section 2–507(2) which states:

(2) Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due.[6]

■ In the instant case, the circumstances surrounding the sale were that debtor was to submit payment upon receipt of the invoice. However, the invoices had notations that title to the fax machines remained in the vendor until delivery, acceptance and full payment by the debtor. In Tennessee, the effect of the notation by Copyfax is to grant it a security interest as

---

3. 11 U.S.C. § 101(31) insolvent means—
   (A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation.... See also, T.C.A. § 47–1–201(23).

4. It is not necessary to delve into the distinction between the two code provisions being that under section 546 the demand must unequivocally be in writing while section 47–2–702(2) does not explicitly make that requirement.

5. 124 Cong Rec H11097 (daily ed. Sept. 28, 1978); *In re Tom Woods Used Cars, Inc.*, 24 B.R. 529, 531 (Bankr.E.D.Tenn.1982).

6. Section 2–507(2) has been enacted in Tennessee as T.C.A. 47–2–507(2). See also, Official Comment 3 to section 2–507.

provided by T.C.A. § 47–2–401(1).[7] Thus, the notation on the invoice was only an indication of the intent of Copyfax to retain a security interest which is unperfected since Copyfax failed to file a UCC–1 with the Office of Secretary of State of Tennessee.

Although section 47–2–507(2) appears to give the seller a right to the return of the property when the buyer fails to make payments on delivery of the goods or documents of title, such rights are subject to the limitations on reclamation under T.C.A. § 47–2–702(2) and 11 U.S.C. § 546(c).

Under the facts of the present case, the seller, Copyfax, delivered the fax machines on or about September 27, 1988. Demand for payment, via telephone call, was made by Copyfax on October 20, 1988. Since demand for payment was not made within the ten day period prescribed by the Code, Copyfax is not entitled to recover the fax machines.[8] Furthermore, the Code states that the Court must provide a seller, who complies with the demand requirements, a priority claim or it may secure the claim by granting a lien but only if it denies reclamation. Copyfax failed to comply with the demand requirements, therefore, it is not to be protected by the Court pursuant to section 546(c) once reclamation is denied.

■ Moreover, the sellers right to reclaim goods under section 2–702(2) is subject to the rights of lien creditors of the debtor.[9] Therefore, in order to provide adequate protection for Copyfax, the Court must find that Copyfax holds a status under the Code deserving such protection.[10] The trustee, DIP, stands in the shoes of a lien creditor who takes priority over a holder of an unperfected secured claim.[11] Copyfax is an unsecured creditor. To provide Copyfax with adequate protection in light of its unsecured status, constitutes preferential treatment as against other similarly situated unsecured creditors. As unsecured claims will not necessarily be paid in full in a Chapter 11 case, it is inappropriate to provide adequate protection to holders of some of those claims and not others.

### Conclusion

Based on the foregoing, Copyfax failed to comply with the prerequisites of reclamation. Further, Copyfax has not perfected its claim, therefore, it simply has an unperfected security interest. As a holder of an unsecured claim, Copyfax is not entitled to adequate protection to the detriment of the other unsecured creditors.

Therefore, this Court, denies the motion by Copyfax for relief from the automatic stay or for adequate protection and;

IT IS SO ORDERED, ADJUDGED, AND DECREED.

---

7. T.C.A. § 47–2–401(1) "[A]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the chapter on Secured Transactions (chapter 9 of this title), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

8. The Court does not propose to address whether telephonic demand received within the ten day period would have sufficed under the facts of this case.

9. See U.C.C. section 2–702(3); U.C.C. 1–201(12) which states that a trustee in bankruptcy stands in the shoes of a lien creditor. See also 11 U.S.C. § 544.

10. In *In re Munsey Corp.*, 10 B.R. 864, 866 (Bankr.E.D.Pa.1981), the Court held that the holder of an unperfected security interest has no interest in the property requiring adequate protection as its interest was subordinate to the interest of the debtor.

11. The debtor-in-possession carries the rights, powers and duties of the trustee pursuant to 11 U.S.C. § 1107.