**In re Walter E. WLODARSKI, a/k/a W.E. Wlodarski, Debtor.**

**Bankruptcy No. 82 B 20611.**

United States Bankruptcy Court, S.D. New York.

June 7, 1990.

Miriam Teitelbaum, Teitelbaum, Braverman & Borges, Great Neck, N.Y., for Trustee.

Richard B. Sacks, Aronwald & Pykett, White Plains, N.Y., for David Engelhardt.

## DECISION ON DISCHARGE OF LIENS

**HOWARD SCHWARTZBERG,**
Bankruptcy Judge.

This is a proceeding brought by the Chapter 7 trustee which seeks a determination that liens against the proceeds of the sale of real property located in Purdy's, New York, and designated on the tax map of the Town of North Salem, County of Westchester, as Lots 40, 155 and 124 of Block 11689 (the "property") should be discharged.

### STATEMENT OF FACTS

On October 4, 1982, an Involuntary Petition for Chapter 7 relief under the Bankruptcy Code was filed against the debtor, Walter Wlodarski and on October 9, 1982, an order for relief was entered.

The trustee who was appointed in this case sold the property described as Lots 40, 155 and 124 of Block 11689. The sale was conducted free and clear of all liens, with liens to attach to the proceeds of the sale, subject to a determination by this court as to the validity of any liens. The sale to Vincent Doria for the sum of $1,000,035.00 was held on October 24, 1985.

However, prior to this sale, the trustee brought an action in this court to have certain prepetition and postpetition conveyances of the property, by the debtor to his wife, Sandra Wlodarski, declared void. The first conveyance, of Lots 124 and 40, was dated October 7, 1981 and recorded on November 5, 1981 at Liber 7735, Page 202 in the Department of Land Records, White Plains, New York. Lot 155 was conveyed, by the debtor, on July 7, 1982 and recorded on July 8, 1982 at Liber 7774, Page 115 in the Department of Land Records, White Plains, New York. In an order entered by this court on February 21, 1985, these conveyances were declared void. On February 28, 1985, a copy of this court's order was duly recorded with the Westchester County Department of Land Records.

A list of all mortgages and judgments recorded with the Clerk of the County of Westchester, Division of Land Records, against the property, along with the proposed payments, were submitted by the Chapter 7 trustee as follows:

| Lien No. | Creditor | Date Recorded | Amount of Claim | Payment Proposed |
|---|---|---|---|---|
| 1 | Federal Tax Lien # 35037 v. Sandra Wlodarski Collector's No. 1320–3117 dated 9/20/83 Tax: 6672–17 for 5/9/83 | 10/4/83 | $ 16,320.86 | –0– |
| 2 | Federal Tax Lien # 36967 v. Walter Wlodarski Collector's No. 1301–3109 dated 1/14/85 | 1/17/85 | $ 16,320.86 | –0– |
| 3 | Union Trust Company P.O. Box 6000 Norwalk, Conn. Judgment v. Walter Wlodarski | 3/18/83 | $ 3,152.75 | –0– |
| 4 | The New Canaan Bank Tax: 6672–17 for 5/9/83 | 4/28/83 | $ 47,652.75 | Satisfied pursuant to Stipulation of Settlement New Canaan Bank |
| 5 | BFHC d/b/a SPAIN OIL P.O. Box R Mahopac, NY Judgment v. Sandra Wlodarski | 4/4/84 | $ 3,279.88 | –0– |
| 6 | Sidney Turner Trustee of Minton Group, Inc. Judgment v. Sandra Wlodarski | 12/18/84 | $2 Million | Order avoiding lien previously so ordered by this Court. |
| 7 | Nicholaus A. Engelhardt, Florida K. Engelhardt, Mortgagees on 40, 155, 124 and 151 | 7/26/78 reduced to $166,-848.66 as of 7/31/86 and to be further reduced as of the date of closing. | $260,000.00 | * See ¶ 8 |
| 8 | Connecticut Bank & Trust Co. Mortgage on Lot 155 | 6/1/82 | $ 35,000.00 | Satisfied |
| 9 | Minton Management Corp. Mortgage on Lots 155 & 124 | 3/1/84 | $ 39,000.00 | Court Order entered avoiding lien previously |
| 10 | Surefire Fuel Corp. 2610 E. Tremont Ave Bronx, NY Judgment v. Walter Wlodarski | 11/18/82 | $ 8,351.90 | –0– |

Although notice of this proceeding was sent to all of the above judgement holders and/or mortgagees, the only party that appeared was David Engelhardt. A statement of facts which were agreed upon by the attorney for the Trustee and the attorney for the Mortgagee, David Engelhardt, was presented to the court and provides as follows:

1. On July 26, 1978 a Mortgage made by Minton Management Corp. was filed by Nicholaus L. Engelhardt and Florida K. Engelhardt, with the Clerk of the County of Westchester, Division of land records in the sum of $260,000.00, against real property known as lots 40, 155, 124 and 151, block # 11689 in Purdys, New York (hereinafter "Mortgage").

2. On January 20, 1986 the mortgage was assigned to David Engelhardt.

3. On October 4, 1982 a (sic) Involuntary Petition in Bankruptcy pursuant to Chapter 7 Title 11, U.S.C. was filed against Walter Wlodarski. An Order for Relief was entered on October 9, 1982 and thereafter Miriam Teitelbaum was appointed Trustee.

4. Lots 40, 155, and 124 (but not 151) were deemed to be property of the debtor's estate, and the trustee did sell lots 40, 155 and 124.

5. The Trustee was authorized to sell lots 40, 155 and 124, free and clear of all liens (including the Engelhardts' Mortgage), with liens, if any, to attach to the proceeds of the sale subject to a determina-

tion by the Bankruptcy Court of the validity and extent of any lien interest.

6. That on November 9, 1982 Lot 151 was sold by Sandra Wlodarski to Daniel MacNamee, Jr., Thomas McEvoy, Jr., and Robert S. Leo subject to the Engelhardt Mortgage.

7. Since the sale of lot 151 subject to the mortgage, Daniel MacNamee, Jr., Thomas McEvoy, Jr., and Robert S. Leo, and their successors in interest have made payments to the Engelhardts to reduce the amount of the mortgage (hereinafter "payment").

8. On December 30, 1986, Daniel MacNamee, Jr., Thomas McEvoy, Jr., and Catherine Sue Leo and Robert S. Leo, Jr., as executors of the Last Will and Testament of Robert S. Leo, deceased, sold lot 151 to Vincent Doria, who is continuing to make the payments to David Engelhardt.

9. That on November 1, 1989 Vincent Doria and David Engelhardt changed the mortgage terms and a Subordination Agreement was entered into wherein David Engelhardt agreed to subordinate the mortgage to a new first mortgage held by Pawling Savings Bank.

10. The Trustee was not given notice of the change.

11. On November 1, 1989 the unpaid balance on the mortgage was $55,000.00.

The trustee asserts that the Engelhardt lien should be discharged because Mr. Engelhardt subordinated and renegotiated the mortgage without her consent.

### DISCUSSION

■ As a preliminary procedural matter, this proceeding is one which seeks a determination of the validity, priority, or extent of a lien or other interest in property. Bankruptcy Rule 7001 provides that such a proceeding should be brought as an adversary proceeding. However, since there has been no objection to the form of the proceeding, the interests of justice will be more readily served by the expeditious resolution of this matter without further delay.

Prior to deciding the validity of the Engelhardt mortgage, this court will address the validity of the other nine liens. First, lien number 4 was satisfied pursuant to a Stipulation of Settlement entered into by New Canaan Bank and the trustee on July 20, 1988 and "So Ordered" by this court on August 19, 1988. The stipulation provided, *inter alia*, for the payment of $65,000.00 to New Canaan Bank and Trust Company in satisfaction of the judgment lien the bank had against Sandra Wlodarski and the proceeds of the bankruptcy estate.

The trustee asserts that lien number 8, filed by Connecticut Bank & Trust Co., has been satisfied. Since Connecticut Bank & Trust has not filed any objections to this motion, this court assumes the mortgage has been satisfied. As a result, lien number 8 can be avoided by the trustee.

■ Lien numbers 2, 3 and 10 were recorded after the filing of the involuntary petition on October 4, 1982. As set forth in 11 U.S.C. § 362(a)(4), the filing of a bankruptcy petition operates as a stay of any act to create, perfect, or enforce any lien against property of the estate. The property, consisting of Lots 40, 155 and 124 of Block 11689, was determined to be property of the estate by this court on February 21, 1985. Accordingly, unless the perfection falls within one of the 13 exceptions described in 11 U.S.C. § 362(b), it can be set aside by the trustee because courts have "uniformly held that the postpetition filing of liens are not only stayed but any such filings are null and void." *In the Matter of Fiorillo & Co.*, 19 B.R. 21 (Bankr.S.D.N.Y.1982), *citing, Don/Mark Partnership*, 14 B.R. 830, 8 B.C.D. 456 (D.C.Colo.1981); *In re York*, 13 B.R. 757, 7 B.C.D. 1311, 5 C.B.C.2d 132 (Bkrtcy.Me. 1981); *In re Munsey Corp.*, 10 B.R. 864, 7 B.C.D. 674 (Bkrtcy.E.D.Pa.1981); *In re Frosdick*, 16 B.R. 60, 5 C.B.C.2d 1123 (Bkrtcy.N.D.Ohio 1981). There has been no response filed by either the Federal Government, Union Trust Company or Surefire Fuel Corporation. Therefore, lien numbers 2, 3 and 10, which were recorded against the property postpetition, are void and of no effect.

In a decision dated September 13, 1985, this court found that the lien docketed by the Minton Group trustee, in connection with a $2,000,000.00 judgment, was "void and unenforceable against the property of the bankruptcy estate of Walter E. Wlodarski." *In re Wlodarski*, 52 B.R. 856, 860 (Bankr.S.D.N.Y.1985), *aff'd*, 86 Civ. 1000 (S.D.N.Y. June 25, 1986). An order was entered on September 30, 1985, which directed that the Minton Group trustee vacate the judgment. As a result of the foregoing, Lien number 6, which was recorded against the property in connection with the $2,000,000.00 judgment, is void and unenforceable as to the property.

A consent order entered into between the trustee of the debtor and the trustee of the Minton Group, dated June 20, 1988 and "So Ordered" by this court on June 20, 1988, voided lien number 9. As a result, the trustee may avoid lien number 9.

After the conveyance of the property by the debtor to his wife, but prior to this court's order declaring the conveyance voidable pursuant to 11 U.S.C. § 548(a)(2), two liens were recorded against the property. They are designated by the trustee as Liens 1 and 5. The trustee states that she "proposes to make no payments to lien holders having liens against Sandra Wlodarski because there is no showing that the lienor has priority over the Wlodarski Trustee in order for the property to remain unencumbered by Sandra Wlodarski."

■ In order to determine the priority of these two liens, this court must determine whether the transfer of the property by the debtor to his wife was void *ab initio* or merely voidable.

"By strict, literal definition, a void instrument or transaction is one which is wholly ineffective, inoperative, and incapable of ratification. A void act would, therefore, have no force or effect "so that nothing could cure it". *Black's Law Dictionary*, 1411 (5th ed. 1979). The word voidable, on the other hand, describes a defective action or act that may be declared void, yet may be cured by confirmation or ratification."

*In re Oliver*, 38 B.R. 245, 247 (Bankr.D. Minn.1984). If it is determined that the transfer was void *ab initio*, then the liens are of no force and effect because the transfer would be a legal nullity. However, if the conveyance was simply voidable, lien numbers 1 and 5 are valid.

■ Section 548(a)(2) of the Bankruptcy Code is set forth as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

In order for the trustee to recover under § 548(a), the transfer or incurred obligation must have occurred within one year prior to the filing of the petition. If the transfer occurred outside this one year period, then the transfer or incurred obligation will remain intact unless it can be set aside by the trustee pursuant to other state or federal law. Because of this one year bar, it necessarily follows that a transfer avoided under § 548 is voidable, instead of void, since by definition, a void transfer is one which is wholly ineffective, inoperative and incapable of ratification.

Furthermore, the language of § 548(c) refers to the transfers as voidable by stating that "[e]xcept to the extent that a transfer or obligation *voidable* under this

section is *voidable* under section 544, 545, or 547 ..." (emphasis added). As a result, the property remains encumbered by lien numbers 1 and 5 which attached while title to the property was in Mrs. Wlodarski's name.

Although the trustee fails to cite a single case in her Memorandum of Law in support of the instant motion, she asserts, based upon various state law principles, that she is entitled to avoid the Engelhardt mortgage. First, she claims that the trustee retained rights to redemption, subrogation and assignment of Mr. Engelhardt's rights in a certain lot known as lot 151, which is adjacent to lots 40, 124 and 155 and which was covered by the original mortgage made by the Minton Management Corporation on July 26, 1978. The trustee also asserts that the estate's rights of redemption, subrogation and assignment in lots 40, 124 and 155 were not extinguished by the sale of the property. In addition, the trustee maintains that because Mr. Engelhardt negotiated a new mortgage which contained new interests rates, as well as other terms which were not part of the original mortgage, and then, subordinated the original mortgage to a new first mortgage, without her consent it follows that this conduct discharged Mr. Engelhardt's lien. As a final ground for discharging the Engelhardt lien, the trustee asserts that Mr. Engelhardt was adequately protected and oversecured because the adjacent lot 151 was valued at more than the mortgage, prior to subrogation.

■ The "strong arm" clause set forth in 11 U.S.C. § 544(a) "enables the trustee in bankruptcy to act as a hypothetical lien creditor as of the day the bankruptcy case is filed." *In re Kors, Inc.*, 819 F.2d 19, 22 (2d Cir.1987) (citations omitted). In addition, after the trustee attains the status of a lien creditor, state law is applied in making a determination of the rights and priorities of lien creditors. *In re Kors, Inc.* at 22.

This bankruptcy case was commenced by the filing of an involuntary petition for relief under Chapter 7 on October 4, 1982 with an order for relief being entered on October 9, 1982. Therefore, the trustee acquired the status of a hypothetical lien creditor as of the commencement of the case and can avoid only those liens which can be avoided by a lien creditor under New York state law. The trustee does not contest the perfection and validity of the Engelhardt mortgage as of the date of the commencement of the case nor does she contest the validity of the lien at the time of the sale of the property. Thus, at the commencement of the case and at the date of the trustee's sale, Engelhardt had a perfected mortgage against the property; the trustee's rights as a lien creditor are subordinate to those of Mr. Engelhardt as a perfected security interest holder. N.Y. Lien Law § 9–301(4) (McKinney 1979).

■ The trustee cites no case law which stands for the proposition that an existing, valid mortgage which has attached to the proceeds of a sale can be extinguished by a trustee because the mortgagee, prior to receiving payment of the mortgage from the proceeds of a trustee's sale, renegotiated and subordinated the mortgage. What the trustee fails to recognize is that she has no rights in the Engelhardt mortgage until such time as she satisfies the mortgage from the proceeds of the sale. The sale was consummated in 1985. Since that time the trustee has failed to distribute the proceeds. She simply holds the status of a hypothetical lien creditor as of the filing of the petition and cannot expect to eliminate the property rights of a valid mortgage holder who comes ahead of her in priority.

The Engelhardt mortgage is a valid lien which attached to the proceeds of the trustee's sale on October 24, 1985. However, the amount of the lien must be determined by this court at a later date because Mr. Engelhardt failed to introduce evidence as to the claimed amount of his mortgage.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(K).

2. The trustee may avoid lien number 8 because the mortgage held by Connecticut Bank & Trust Co. has been satisfied.

3. Lien number 4 has been satisfied pursuant to a Stipulation of Settlement entered into by New Canaan Bank and the trustee on July 20, 1988 and "So Ordered" by this court on August 19, 1988.

4. Lien numbers 2, 3 and 10 are void because they were recorded after the filing of the involuntary petition in violation of 11 U.S.C. § 362(a)(4).

5. Pursuant to a decision of this court dated September 13, 1985, together with an order entered on September 30, 1985, liens which were docketed in connection with a $2,000,000.00 judgement were declared void and unenforceable. Lien numbers 6 and 9 are void because they were recorded as a result of the judgment and thus, fall within the scope of this courts order.

6. Lien number 9 was declared void pursuant to a consent order entered into between the trustee for the debtor and the trustee for the Minton Group on June 20, 1988.

7. A fraudulent conveyance avoided pursuant to 11 U.S.C. § 548(a)(2) is merely voidable, not void *ab initio*. Therefore, lien numbers 1 and 5, which attached to the property while title to the property was in the name of Mrs. Wlodarski are valid.

8. The Engelhardt mortgage is a valid lien which attached to the proceeds of the sale of the property. The amount of the mortgage will be determined by this court after the introduction of evidence, by both parties, as to the claimed amount.

SETTLE ORDER ON NOTICE.